UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SAEED ALI,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL MUKASEY, et al.,<br><br>　　　　　　Defendants. | Case No. C07-595MJP<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS |

This matter comes before the Court on Plaintiff's motion for attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  (Dkt. No. 11.) After reviewing the motion, Defendants' response (Dkt. No. 12), Plaintiff's reply (Dkt. No. 13), and all papers submitted in support thereof, the Court GRANTS Plaintiff's motion.

**Background**

Plaintiff Saeed Ali was born in Somalia and has been a Legal Permanent Resident since August 25, 2000.  On September 23, 2005, Mr. Ali filed an application for naturalization. (Dkt. No. 5-2, Ex. B.)  On January 9, 2006, the United States Citizen and Immigration Services (USCIS) interviewed Mr. Ali and Mr. Ali passed the English language, U.S. history, and government tests. (Id., Ex. C.)  As of March 2, 2007, when he filed his complaint, USCIS had not issued a decision on his naturalization application.

Mr. Ali's claims were presented with fourteen other plaintiffs in an amended Complaint for Naturalization, Declaratory Relief and Mandamus filed by Hassan Shamdeen, Case No. C07-164MJP, pursuant to 8 U.S.C. § 1447(b).  The Amended Complaint requested the following

ORDER — 1

relief:

> Plaintiffs request that the Court grant their naturalization applications, give them their oaths of citizenship and order Defendant CIS to prepare and provide certificates of naturalization.  In the alternative, Plaintiffs request that the Court remand the cases to CIS with instructions that the applications be adjudicated within 30 days of the order.

(Dkt. No. 1 at 3.)  In a later section of the complaint entitled "Request for Relief," Plaintiffs ask the Court to, among other things:

> Grant the applications of plaintiffs, and give the plaintiffs their oath of citizenship, or, in the alternative, order Defendant CIS to administer oaths of citizenship to plaintiffs within 10 days of the order.

(Dkt. No. 1 at 15.)  On Defendants' motion, the Court severed plaintiffs' claims and created fifteen discrete cases.

Mr. Ali was assigned Case No. C07-595MJP.  On April 25, 2007, the Court ordered Defendants to show cause why the Court should not grant Mr. Ali's application for naturalization. (Dkt. No. 2.)  Defendants responded to the order with a motion to remand. (Dkt. No. 4.)  In that motion, the Government argued that the Court should remand the matter to USCIS for adjudication of the application within thirty days because the FBI recently completed its "name check" of Mr. Ali.  On July 24, the Court issued an order in which it concluded that it has jurisdiction over this matter, and over Plaintiff's objection, granted the Government's motion to remand with instructions to adjudicate Mr. Ali's application within thirty days. (Dkt. No. 8.)  On August 2, USCIS issued the oath and certificate of citizenship to Mr. Ali. (See Dkt. No. 10.)

Plaintiff now brings this motion for attorneys' fees and costs pursuant to the EAJA.

**Analysis**

Under the EAJA, a litigant who has brought a civil suit against the United States is entitled to attorney's fees and costs if: (1) he is the prevailing party in the matter; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable.  28 U.S.C. § 2412(d)(1)(A). Additionally, the application for fees must be filed within 30 days of a final judgment.  Defendants

ORDER — 2

1    do not challenge Plaintiff's motion as untimely.

2    **I.    Prevailing Party**

3          Two factors define "prevailing party" under the EAJA. <u>Carbonell v. INS</u>, 429 F.3d 894,

4    898 (9th Cir. 2005). Plaintiff's action must have resulted in a "material alteration" in the parties'

5    legal relationship and that alteration must have been "judicially sanctioned." <u>Id.</u> A "material

6    alteration" means "the defendants were required to do something directly benefitting the plaintiff

7    that they otherwise would not have had to do." <u>Id.</u> at 900. "A party need not succeed on every

8    claim in order to prevail. Rather, a plaintiff prevails if he has succeeded on any significant issue in

9    litigation which achieved some of the benefit [he] sought in bringing suit." <u>Id.</u> at 901 n.5 (internal

10   citations and quotation marks omitted). Mr. Ali sought the following relief in his complaint: (1)

11   that the Court grant his naturalization application; or (2) that the Court order USCIS to

12   adjudicate his application and administer an oath of citizenship. The Court did not award either of

13   those forms of relief. But alternatively, Mr. Ali requested that the Court "remand the case[] to

14   [US]CIS with instructions that the applications be adjudicated within 30 days of the Order." (Am.

15   Compl. at 3.) The Court did remand with instructions to adjudicate within thirty days and Mr. Ali

16   was quickly naturalized. Mr. Ali thus achieved a material alteration in his legal relationship with

17   Defendants when his application was finally adjudicated.[1] <u>See</u> <u>Al-Ghanem v. Gonzales</u>, 2:06-CV-

18   320TS, 2007 U.S. Dist. LEXIS 8900, at *6-7 (D. Utah Feb. 7, 2007).

19         The material alteration in the relationship between the parties must also be stamped with

20   some "judicial imprimatur." <u>Carbonell</u>, 429 F.3d at 901. Relief achieved through a voluntary

21

22         ---

23         [1]      The Government suggests that Mr. Ali is not a prevailing party because he opposed
     the Government's efforts to remand this matter back to USCIS. But the Court's decision to remand
24   over Plaintiff's objection does not strip his of prevailing party status. <u>See</u> <u>Al-Ghanem v. Gonzales</u>,
     2:06-CV-320TS, 2007 U.S. Dist. LEXIS 8900, at *6-7 (D. Utah Feb. 7, 2007) ("The Court looks
25   to the substance of the litigation to determine whether an applicant has substantially prevailed in its
     position, and not merely the technical disposition of the case or motion.") (quoting <u>Kopunec v.</u>
26   <u>Nelson</u>, 801 F.2d 1226, 1229 (10th Cir. 1986). Mr. Ali is still a prevailing party, even though the
     Government adopted his litigation position during the litigation.
27

ORDER — 3

1   change that was simply prompted by the lawsuit does not convey prevailing party status on the

2   plaintiff.  See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S.

3   598, 605 (U.S. 2001) (rejecting the "catalyst theory" on the ground that it lacks the critical factor

4   of "judicial sanction").  Here, USCIS did not voluntarily adjudicate Mr. Ali's application, but was

5   compelled to do so by the Court.  When Mr. Ali brought this action under § 1447(b), the Court

6   assumed exclusive jurisdiction and had two options for disposition of the matter: (1) to determine

7   the matter on the merits; or (2) to remand the matter, with appropriate instructions, to USCIS to

8   determine the matter. 8 U.S.C. § 1447(b); United States v. Hovsepian, 359 F.3d 1144, 1161 (9th

9   Cir. 2004).  On July 24, 2007, the Court remanded Mr. Ali's case to USCIS with explicit

10  instructions to adjudicate the application and reserved the right to re-establish jurisdiction if

11  Defendants failed to comply with its order. (Dkt. No. 9.) Compare Chebli v. Chertoff, 07-CV-

12  10750, 2008 U.S. Dist. LEXIS 7839 (E.D. Mich. Feb 4, 2008) (denying EAJA fees in § 1447(b)

13  case where parties privately settled matter before Court held naturalization hearing).  USCIS

14  acted on Mr. Ali's application at the direction of the Court and would have violated a court order

15  if it had not done so.

16      Mr. Ali's success on the merits does not rely solely on the fact that USCIS ultimately

17  granted his application for naturalization; instead, his success stems from the fact that USCIS

18  adjudicated his naturalization application at all.  Section 1447(b) is "a statutory check on what

19  could otherwise amount to an infinite amount of time available to the government in which to

20  render a decision on the application." Alghamdi v. Ridge, No. 3:05cv344-RS, 2006 U.S. Dist.

21  LEXIS 68498, *16 (N.D. Fla. Sep. 25, 2006).  The Ninth Circuit has found that "[a] central

22  purpose of [§ 1447(b)] was to reduce the waiting time for naturalization applicants." Hovsepian,

23  359 F.3d at 1163 (citing H.R. Rep. No. 101-187, at 8 (1989); 135 Cong. Rec. H4539-02, H4542

24  (1989) (statement of Rep. Morrison)).  At the time he filed his complaint, Mr. Ali had been

25  waiting for over a year for the Government to issue a decision on his naturalization application.

26  Mr. Ali's action put an end to the delay in processing his application and forced USCIS to make a

27

ORDER — 4

1   determination on his immigration status.  USCIS's discretion in deciding whether to grant or deny

2   Mr. Ali's application does not transform the adjudication of that application into a voluntary act.

3   See Alghamdi, 2006 U.S. Dist. LEXIS 68498, at *17 ("Whether USCIS ultimately grants or

4   denies the application are [sic] irrelevant for determining whether a plaintiff has succeeded on the

5   merits of an action based on § 1447(b).  The sole purpose of § 1447(b) is to provide the applicant

6   with a decision on the application where a decision has been withheld for an unreasonable amount

7   of time.").   Mr. Ali is the prevailing party in this action. See id. at *39 (finding plaintiff prevailing

8   party where court determined that application had been wrongfully delayed, scheduled hearing,

9   issued remand order while retaining jurisdiction, and where agency then naturalized plaintiff).

10  **II. Substantially Justified**

11       A litigant may not recover fees under the EAJA if the government shows that its litigating

12  position and "the action or failure to act by the agency upon which the civil action is based" were

13  substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d);

14  see also United States v. Real Prop. at 2659 Roundhill Drive, 283 F.3d 1146, 1151 n.7 (9th Cir.

15  2002) ("The EAJA defines the 'position of the United States' as not only its litigation position in

16  the civil action, but also the government's action upon which the civil suit is based.").  "Congress

17  enacted the EAJA to ensure that individuals and organizations would not be deterred by the

18  expense of unjustified governmental opposition from vindicating their fundamental rights in civil

19  actions and in administrative proceedings." Abela v. Gustafson, 888 F.2d 1258, 1262 (9th Cir.

20  1989) (emphasis added). "[W]hen analyzing whether the Government was substantially justified in

21  a particular case, courts should consider the Government's litigating position as a whole."

22  Comm'r v. Jean, 496 U.S. 154, 161-62 (1990).  The Government bears the burden of showing

23  that its position was substantially justified. Real Prop., 283 F.3d at 1151 n.7.

24       The government's litigation position rested on a single argument – that remand was

25  appropriate because USCIS is better equipped to adjudicate a naturalization petition.  To find that

26  the government's litigation position was substantially justified, the Court must determine that the

27

ORDER — 5

1    arguments had "a reasonable basis in law and fact." <u>Abela</u>, 888 F.2d at 1264.  Defendants'

2    argument that USCIS is better equipped to assess the merits of a naturalization application is

3    reasonable.

4          In its briefing, the Government does not even attempt to argue that its pre-litigation

5    conduct was substantially justified.  The Government's failure to timely act on Mr. Ali's

6    underlying application was not reasonable.  Mr. Ali brought this action because USCIS had failed

7    to adjudicate his naturalization petition even though he had completed his citizenship interview a

8    year earlier.  Although no statutory time limit governs the adjudication of naturalization

9    applications, agencies are required to conclude matters presented to them within a "reasonable

10   time." <u>See</u> 5 U.S.C. § 555(b).  Further, the applicable regulations state that "[a] decision to grant

11   or deny the application shall be made at the time of the initial examination or within 120-days after

12   the date of the initial examination of the applicant for naturalization[.]" 8 C.F.R. 335.3(a).  More

13   that one year is not a reasonable amount of time to wait for the agency to adjudicate the

14   application. <u>Compare Smirnov v. Chertoff</u>, No. 06-10563-RWZ, 2007 U.S. Dist. LEXIS 9598

15   (D. Mass. Jan. 18, 2007) (two year delay unreasonable) <u>with</u> <u>Simonovskaya v. Chertoff</u>, 06-

16   11745-RWZ, 2007 U.S. Dist. LEXIS 5446, at *6 (D. Mass. Jan. 26, 2007) (one day delay not

17   unreasonable).

18         In other similar cases before this Court, the Government has argued that it could not

19   adjudicate the naturalization application until the FBI completed all background checks.  The

20   Northern District of Florida found that the explanation "that background checks were necessary

21   and had to be completed before the plaintiff could be naturalized... merely restates, in a

22   conclusory manner, the necessity of completing the background check; it does not <u>justify</u> the

23   delay." <u>Alghamdi</u>, 2006 U.S. Dist. LEXIS 68498 at *43 (emphasis in original).  The <u>Alghamdi</u>

24   court reasoned:

25         [W]hile a reasonable person would not dispute the necessity of conducting a
           background check on an applicant for naturalization, a reasonable person would
26         require a satisfactory justification for a substantial <u>delay</u> in completing the background
           check.  Indeed, government agencies are required to conclude matters presented to

27

ORDER — 6

them within a "reasonable time." See 5 U.S.C. § 555(b).  Otherwise, an applicant for
naturalization remains in perpetual limbo and is de facto, denied his citizenship, a
right that has been afforded by Congress to deserving individuals since the rise of the
American democracy.  This is particularly true when Congress has enacted legislation
permitting the applicant to apply to federal district court if a decision is not rendered
on the application with 120 days of the completion of the examination under 8 U.S.C.
§ 1447(b).

Alghamdi, 2006 U.S. Dist. LEXIS 68498 at *42-43 (emphasis in original).  The Government has

suggested in the other cases severed from this one that the underlying delay in processing the

applications is justified because the FBI does not have sufficient resources to complete the

millions of name check requests it has received since the events of 9/11 and in the interest of

national security, USCIS's only recourse was to wait for the results of the name checks before

adjudicating the applications.  Insufficient resources to do the job that Congress has charged the

agency with doing does not substantially justify the delay. See Berishev v. Chertoff, 486 F. Supp.

2d 202, 207 (D. Mass. 2007) (noting that the Government's burden to show substantial

justification "cannot be borne by a general appeal to delays attributable to the FBI background

check process" because otherwise, "the 120-day statutory window framed by 8 U.S.C. § 1447(b)

would be of no effect"); Shalan v. Chertoff, No. 05-10980-RWZ, 2006 U.S. Dist. LEXIS 82795,

at *6-7 (D. Mass. Nov. 14, 2006); but see Deng v. Chertoff, No. C 06-7697 SI, 2007 WL

2600732, *1 (N.D. Cal. Sept. 10, 2007) (finding delay justified because of volume of security

checks conducted by agency).  The Court does not find that USCIS's delay in processing Mr.

Ali's naturalization application was substantially justified.  And the Court does not find that any

special circumstances make the awarding of fees unjust.

**III.  Reasonable Fees and Costs**

Plaintiff is entitled to a "reasonable" amount of fees. 28 U.S.C. § 2412(b).  The EAJA

includes a statutory cap for attorneys' fees, unless a special factor justifies a higher rate.  28

U.S.C. § 2412(d)(2)(A).  Because Mr. Ali's primary attorney needed specialized immigration law

skills to file the original complaint of fifteen plaintiffs, her efforts in originating the action justify a

higher market rate.  See Pirus v. Bowen, 869 F.2d 536, 540-42 (9th Cir. 1989).  However,

1   Defendants greatly multiplied the work on these cases by moving to sever the action into fifteen

2   distinct cases.  Because much of the work required in this matter was duplicated for the multiple

3   plaintiffs, the Court finds it reasonable to award the statutory rate of fees to any hours spent

4   modifying work product for related cases.  Hours billed by other members of Plaintiff's legal team

5   are to be compensated at the statutory rate.  Further, Plaintiff is entitled to reasonable costs.

6   Because the Court acknowledges Plaintiff's primary attorney's immigration law expertise, the

7   Court disallows any consultation fee by an outside immigration expert.

8                                                         **Conclusion**

9          The Court GRANTS the motion for attorneys' fees.  Plaintiff is entitled to attorneys' fees

10  at the market rate for time spent on any original work in preparing this action, and attorneys' fees

11  at the statutory rate for time spent modifying original work for this action once the fifteen

12  plaintiffs in the original complaint were severed into discrete cases.  Plaintiff is also awarded

13  reasonable costs.  The parties are directed to submit a joint proposed order regarding costs and

14  fees that accords with the Court's instructions and contains documentation of costs and time

15  billed.  The proposed order shall be submitted to the Court within twenty (20) days of this order.

16         The Clerk is directed to send a copy of this order to all counsel of record.

17         Dated: February 25, 2008.

18

19

20                                                        Marsha J. Pechman
                                                          United States District Judge
21

22

23

24

25

26

27

ORDER — 8